Good morning, Your Honor. May it please the Court. My name is Matthew Dowd. I represent the appellants, the two inventors of the application at issue that's on appeal from the Board. Your Honor, I'd like to start off with just a few points about what's not in dispute. There's no dispute that the Eidel process and Sponobel analysis applies here. The PTO doesn't dispute that. There's no dispute that our inventors were the first to identify the problem with the prior art, or that they were also the first to identify a solution to the prior art. See, your problem for me is you want to rely on Sponobel. I don't know how to say that. I'm just going to say it. I say Sponobel. Sponobel, whatever. I'm going to say Sponobel. Sponobel. You're correct. So you rely on that, and I don't think that in general your representations about that case are wrong when there's an unknown problem. But the problem here and what makes this case different from that one is that there was a separate reason that the agency found for combining, which is improving structural integrity. So I don't know if that case governs here when there is a separate motivation at play. I mean, yes, your inventor came up with a problem and a way to cure that problem. But if there was a motivation to come to that same conclusion but for other reasons, then I don't understand the problem. Judge Moore, I think the problem is twofold with respect to that. I think you can accept the fact that in certain situations there might be another motivation to get to the same solution. We don't dispute that. In those instances, I think the proper way to analyze it is to weigh the evidence. And so Sponobel evidence, eyeball process evidence, is evidence of non-obviousness. The PTO doesn't dispute that. Now, the second fold, we dispute that the examiner gave a reason or rationale or motivation to make the modification. You don't think that when they said structural integrity, that was sufficient? No, Your Honor. And I'll add something to that. Because in the non-final action, the three words that the examiner used was obvious design choice. And in the final office action, they talked about improving the strength of the product and structural integrity. Correct. And then in the examiner's answer, they repeated that again. And as I understood the proceedings below, Mr. Conrad didn't dispute any of that. The legal argument was solely devoted to just arguing about Sponobel and eyeball process. And that Sponobel and eyeball process have to be considered in the obviousness context. And as I understand it, at one point, Conrad's attorneys accept that there was a prima facie case of obviousness made. But then they feel like they rebut it with the Sponobel theory of the invention story here. And I guess I have the same question Judge Moore has, which is, you know, we have cases such as Purdue Pharma, for example, where we've indicated when there is a separate through line for ultimately making the claimed product, and that it would be obvious to do so, then why does a case like eyeball process or Sponobel apply? Well, let me ask, I'll answer that last part directly. Because the PTO doesn't dispute that Sponobel and eyeball process applies. Well, maybe they don't dispute that Sponobel and eyeball process are good law. And, you know, it's ultimately up for us to decide to what degree does Sponobel apply. And do we agree, therefore, with the board's approach here, which was to not wrestle with the invention story, given that there was a separate independent line of motivating, a motivation to make this adjustment to this urine deflector, that doesn't need to somehow at all impact the invention story here. Well, Judge Chen, I think if you're suggesting that the PTO can ignore the Sponobel eyeball process evidence, if there's a separate reason to get to the solution, I think that's incorrect under the law. I mean, I didn't detail... Under what law? Under this case, this court's law, and as well as... In what case? All right, so turning to Purdue Pharma, for example, you mentioned Purdue Pharma. Purdue Pharma, the primary reason the court didn't accept the Sponobel argument was that that was a product claim issue. And the evidence that was being advanced was more relevant to the method of making it. So in addition to that, we have Leo products, Leo pharmaceutical products, which is very, very similar to this case, in that there was... The claim in that case was directed to a pharmaceutical composition of three components. It was vitamin D analogs, corticosteroids, and a solvent. And there was a long recognition that in the prior art there was a stability problem, and the claim required that it be a stable solution. And the primary reason that the court considered the Sponobel evidence was that it was an invention story. But it's more than an invention story. It's an explanation of why what looks like, in hindsight, an obvious design choice is not really obvious. And I would like to also... I'm sorry. I just feel like this is a very basic concept. And the basic concept is throughout our cases for decades, we have held that the reason that someone advocates the skilled artisan may have been motivated to make the combination does not have to be the same reason that the inventor sought to make the claimed combination. That's throughout our cases very clearly. Judge Moore, I accept that's in some cases, in many cases, in fact. But there hasn't been a case that has to address this issue particularly. If we're talking about... Well, let me... I'll back up. If we're accepting that the examiner's four or five-word explanation of why to modify the prior art is sufficient. Something that you did not argue against below. Well, that's what the PTO is arguing. Well, let's assume for the moment that's true. That's right. I'm assuming for the moment, for my answer right now, that that's true. So what I'm suggesting and I think advocating is that you have that evidence on one side of the obviousness line. And then we have this spinobal, respondable, I will process evidence on the other side. And so even in a situation where you have both routes to the end product, there has to be some weighing of the evidence. The PTO... Don't agree. I don't even understand the logic of it. If there's one reason to make the combination and a skilled artisan would make it for that reason, it doesn't matter to me at all if there were ten other reasons to make the combination that the skilled artisan didn't know about or understand that only the inventor realized. I don't understand why that ought to weigh against the obviousness. If there's one really good reason to make the combination that everybody knew about or a skilled artisan would understand in advance, who cares if the skilled artisan didn't understand all the other reasons? I don't see why that's relevant. It doesn't have to be obvious for every reason. Correct. Just for one. I agree with that. But let me focus on the board's analysis here because I don't really think that that's what they did. So if you look at Appendix 5, and this is in the board's opinion, and this is really where they, I think, went off track in considering the evidence that we presented in terms of the spinobal evidence. And this is the middle of the paragraph. The board says, Appellants do not apprise as how the combined teachings of Conrad and Rabiendran would fail to inherently solve the problem proposed by the appellants. And so this idea of inherently solving the problem, I mean, that's a fundamental problem with the board's analysis. Any later developed combination of elements necessarily solves a problem that was identified solely by the inventors and solved solely by the inventors. There's no way to reconcile that statement and that reasoning in the board's opinion with either eyeball process or spinobal. I'll be honest. I don't really understand that sentence either. But I do understand the board as to have separately at the top of the page adopted the improving structural integrity of strength of the connection motivation. Great. I agree with that. But what I'll say in terms of the merits of that separate motivation to modify the prior art, I just don't think it's sufficient under this court's case law. For example, if we look at the reason, this was the reasoning in the final office action and the examiner's answers. There's nothing in Rabiendran that talks about a seam or a seamless device. There's nothing in Rabiendran that talks about why you would, quote unquote, improve structure integrity. What does that mean, actually? There's nothing in the Conrad 09 application that suggests that you would want to strengthen the integrity of the device. It's a flexible device. Why make it less flexible? Why make it more flexible? I think our ultimate point is that in considering this Bayer's conclusory statement, it is pure hindsight in this case where the examiner saw one missing element, the lack of a seam, found a close reference. We don't dispute that it's a close reference. It's practically a 102 reference, isn't it? Correct, Your Honor. It is. It's missing one element, but it's not a 102 reference. It's an obviousness reference. And that's exactly why Chief Justice Taft in Eibel process focused so much on the importance of why the inventors who had solved the problem in terms of the pitch angle for the printing machine, why that invention was non-obvious. It goes back to statements that have been repeated in this court's case law and the CCPA's case law that once you identify— the examiner's prima facie rationale for obviousness, strengthening the product, having improved structural integrity, then this argument in front of us right now is off the table, right? What it boils down to is your theory that the invention story counts every single time and needs to be taken into account every single time, even if there's a completely separate theory for motivation to render the claim obvious. Is that fair to say? Judge Chen, in terms of that describing our legal position, I think that's right, but if I may just restate so, I'm clear. Because I think when you assess obviousness in terms of a motivation to combine or a motivation to modify the prior art, you're always assessing the strength of it, right? You're always assessing, well, how strong is the motivation? Is it almost directly on point? Is it telling you to modify this particular element? Is it telling you to modify this element for this particular reason but in a different device so therefore you could use that reasoning to the prior art device that's at issue in the rejection? All of those go to the strength of the argument that the examiner is presenting. And whenever you have that, you have to consider countervailing evidence. And that's what we're saying here. No, countervailing evidence would be other people didn't think it would improve structural integrity. Or countervailing evidence would be structural integrity wasn't important in this space because you wanted a device that was more flexible, not less. Countervailing evidence wouldn't be a separate, wholly distinct silo of motivation. I don't understand how that is countervailing evidence. Well, Your Honor, it certainly is. I think it is because it tells you that it's... ...countervail whether someone would be motivated based on structural integrity to make this combination. Because there's a recognition that there's a problem that hadn't been... A different problem. Right, right. There's nothing to a structural integrity that you're going to recognize and then fix. Well, what I would say, Judge Moore, is that there's no evidence that there's a problem with the structural integrity. And so in terms of... But that's the argument that Judge Chen said you needed to assume was potentially off the table. So is there... Where... Why don't you help me? Where did you make that argument below? Where did you all argue that the examiner's claims about structural integrity were insufficient or inaccurate or flexibility is actually preferred? Where did you make some argument that would contradict that motivation? So I see I'm way into my rebuttal time. If I can answer that when I stand up again. Absolutely. Thank you, Your Honor. All right. Okay. Mr. Piccolo, please proceed. Thank you, Your Honors. It may please the Court. I heard that the PTO did not weigh the problem evidence in applicant specification. I respectfully dispute that. And really quickly, I have citations by the examiner discussing a problem. Appendix page 94, 130, 131. The examiner was discussing the problem argued by applicant and the board on pages 3 and 5. And on page 5, multiple times, talked about the problem and Spinoble and the argument that applicant presented in its brief to the board appearing at pages 116 to 121 of the record. That argument is about problem and Spinoble. About problem and Spinoble, which we answered... Why did your red brief say that the Spinoble evidence and argument has to be always taken into account in a 103 analysis? When there's a counter theory to that, which is if there's a completely independent basis for a motivation to combine references that renders the claims obvious, then the invention story is not really something that needs to be taken into account. Thank you, Your Honor. Because the board and examiner considered that evidence, it was best for us to say... They considered it? Well, by talking about the problem and it not making a difference against the strong references, Raviendran has... I guess I'm talking more about a legal question right now, which is, am I misreading something in your red brief, which seems to suggest that the Spinoble evidence and argument always has to be taken into account in any 103 analysis when it's presented? And it's a curious thing to say because it runs into the teeth of what Judge Moore was saying before, which is whatever is the motivation for an inventor to come up with a particular invention doesn't have to be the same basis that perhaps the PTO would use in order to find claims to be obvious. Thank you, Your Honor. I don't think we said it that way. What we said was we didn't take exception with the case law Spinoble process. And when there is that evidence, as the board and examiner addressed it, since that was the primary argument to the board, the board had a strong case because the board and the examiner discussed the problem. So I think in the best of both worlds, even if it should not have been considered, the examiner and board expressly considered it and respectfully inviting the court's attention to footnote four in the board's opinion. It talked about the Spinoble case and above. It talked about how the problem proposed by appellants was basically solved by Ravindran without Ravindran expressing so, because Ravindran has no seam and therefore it collects no liquid. So Ravindran. So are you saying the board at footnote four took into account the Spinoble argument? Yes. Yes, because above that, too, near where the footnote is dropped, it says we are looking at appeal brief 8 to 11 in the middle of that page and addressing the problem proposed by appellants and pages 8 to 11 of the brief to the board are the problem and Spinoble arguments, which the board said and what we're talking about in the specification is the problem. I don't even understand that sentence and I don't understand your reliance on it. It makes absolutely no sense. Further, appellants do not apprise us how the combined teachings of Conrad and Ravindran would fail to inherently solve the problem. That's exactly the point. The point is his argument is we put two things together that had never been put together and solved a problem. So for the board to say he doesn't explain to us how when you put these two things together, it doesn't solve the problem. Hello. That's his invention. That sentence makes no sense. And your articulation of your argument makes even less sense to me right now. Because, Your Honor, the board was addressing what was presented to it was Spinoble and the problem evidence. And all that was in the specification was seems collect liquid. So the board said, and largely relying on what the examiner said, the examiner said in the quote down below, the argued problem and the argued problem, and that's the Spinoble evidence of seems collect liquid, have been carefully considered. And that's in the examiner's answer four to five. And that's at 130 to 131 of the record. So when we agreed with his legal propositions that such evidence should be considered, and I think maybe what Your Honor, Judge Shen was referring to is on pages 16 to 17 of our red brief, we were talking about, yes, the examiner and board considered both the prior art, which had a strong prima facie case, everything but the lack of a folding seam in revandron had an integrally formed seam which collects no liquid. And so then we said what the board and examiner did was spot on because it considered both the prior art and his little evidence of a problem. And the evidence I think it could help the court to focus on is on page 16 of the record in paragraph 10 where all they say in this specification is a seam collects liquid. So that's the problem. And the board said and the examiner said that revandron, because it is seamless, is not going to have that problem. It performs the function that this invention was intended to perform. So because the examiner and board went the extra mile, if you will, of considering the evidence. And that's what was presented in the brief to the board. In the brief to the board, respectfully inviting the court's attention to page 116 of the record, that passage starts with Spinoble and talks about problem in the specification. It quotes references paragraph 10 of the specification earlier which talks about a seam collecting liquid. So the board addressed what was argued to it. So the board committed no reversible error because the board also affirmed the cream of fish case which was waived and not argued specifically in the brief to the board. And I'd also like to talk about how Leo Pharmaceuticals was a case concerning a lot of secondary evidence going on there. It had long passages in the opinion about unexpected results, evidence, commercial success, long felt but unsolved need, and much teaching away evidence. So if I may respectfully urge the court that the board did extra. Yes, it also had the prima facie case which was waived. And as is typical, when an applicant urges that I found this problem, it should outweigh the prima facie case. The board took the extra step to shore up the case totally as to what was argued to it and said your evidence of seams collect liquid has been considered but we still affirm the examiner's strong prima facie case. So you think that the board as a matter of law has the obligation to weigh somehow in assessing motivation combined both the inventor's story about what caused him to make the combination alongside a separate basis for combining that they came up with on their own? Well, there are CCPA cases that say that the evidence of a problem, Spinoble, Weissman, that I was looking at earlier today, cases say consider the applicant's identification of a problem as urging in the applicant's favor. And as a matter of fact, I think the case law goes to, it needs to be either in the form of NAFTA David or in the specification which was in this case. So is your answer to my question yes, do you believe our case law would require the board to consider both the articulation of a problem and consider that as negative evidence of a motivation combined alongside the articulation of the solution to a separate problem which would be positive evidence and they have to somehow weigh those two against each other? Yes, Your Honor. I think Leo Pharmaceuticals says that. The problem with what I think you're saying is that you would be conceding that there's a flaw in the board's decision because the board never took on the argument by the other side that there was a long standing unappreciated problem. And that long standing unappreciated problem was that urine collects in this seam of their urine deflector and then that urine ultimately causes an icky smell that's very undesirable. And so they figured out that cause of that problem that no one else had figured out and so therefore that can be a basis for patentability per EIBO process and spawnable. The board never took that on. What the board did was it clung to its alternative independent theory for why the claims would be obvious, strengthening the overall product or whatever, and then said that resulting obvious product would inherently solve the problem raised by the other side. But that's not the same thing as actually taking into account the invention story of recognizing a problem that had not been appreciated before in the art. And the board never actually took that piece on. And that's the problem with what I think is what I'm hearing is the agency's concession that yes, they have to take that on. I'm sorry, Your Honor. I'm trying to answer it in a way as to what the board did. And the board addressed the evidence. It could have used a couple of more sentences, but the board was talking about inherency that even if there is this problem and the examiner, again, respectfully invite the court's attention, the examiner said at the bottom of page 5, the argued problem and intended use have been carefully considered. So that's the problem evidence. So the examiner expressly considered it, and all it was was seems collect liquid. And they said that, well, look at Reviendran. Reviendran is stronger. It's all one piece. It'll surely do the job. And that's the examiner's prima facie case, which the applicant did not contest to the board. So the board, one, had the wave ground of prima facie case, and then, two, focused on the Spinoble-Ibel process, which Leo Pharmaceuticals can support that you consider such evidence. And the board addressed the evidence that the examiner also addressed. So to the extent the board did more than it had to, it's reversible error. It's harmless error. Excuse me. structural integrity problem based on a seam. If I don't read the board's opinion as having done what you claim it did on page 5, should I reverse? No, Your Honor, for two reasons. One, the board, as was talked about before, the strong prima facie case has its own reason for affirmance, that the evidence has to be really significant for it to outweigh the strong prima facie case. What evidence has to be really significant? That if there's evidence of a problem overcoming the strong prima facie case as… But if I don't read the board as having addressed whether that evidence was strong or not, how can I leave this decision intact? Because it was considered by the board. I'm sorry. So assuming it wasn't considered by the board, then it was harmless error because of the strong prima facie case. KSR, there's a predictable result here, a predictable variation, the strong prima facie case. And Kahn, you don't need the same reason to combine the reference. And those were his arguments to the board, which the board kept on deflecting, that you don't have to have the same problem or the same reason in the prior art. Let me see if I can get something out of you. Do you agree with Judge Moore's earlier statement when she was having a colloquy with your opposing counsel that when the board and the agency have a legitimate basis for motivation to combine references, that's completely independent and separate from the motive the inventor had behind his invention story, which was based on some recognized problem that was unappreciated, then that's all the agency needs to issue a legitimate Sound 103 rejection. It doesn't need to take into account that separate invention story. Yes, Your Honor, because... Okay. Thank you. If Judge Luria was here, he would have loved it when you said the board was deflecting all of the appellant's arguments. So I don't think it was actually an intentional pun, but it was nonetheless an enjoyable one. Thank you all. If I may, to address your question from earlier... If I understood the PTO as arguing that and acquiescing in the idea that the Spinoble F evidence had to have been considered as part of the motivation to combine, which is something that you argued, but I took some disagreement with, but apparently Mr. Piccolo disagrees with me and believes the PTO did have an obligation to combine the evidence. That's the way I understood his oral argument today. Lots of quotable portions that said that. One interpretation. That was his argument, whether it's right or not is a different question. But if I was to understand him representing that the agency held the view that the Spinoble evidence always had to be considered, do you think they considered it in this case? No, Judge Moore, and that's how I understood the colloquy back and forth. With the exception of Judge Chen's final question, I understood... Judge Chen's rehabilitation of the witness? Go ahead. Leave that alone. Good choice. But no, I understand that was the PTO's position, and I think part of the issue in this case is sort of... In fact, that wasn't just their position today. That was kind of their position in the brief on page 15, wasn't it? Their position in the brief on page 15 was the agency did consider this evidence and came to a conclusion. Correct, and I think we addressed that fairly clearly in our reply brief. I'm aware of no case from this court that would uphold that footnote from the board as actually evaluating the evidence that was presented to it. They acknowledge it, and I think this is what we said in our brief. They acknowledge the evidence, but they never evaluate it. There's not a single consideration of weighing the evidence. So again, if Mr. Piccolo's position is as I understand it, I think we're on the same page in terms of what you have to do with the spinoff, and I will process evidence. And I think part of the confusion is that this is an issue that does not come up very frequently. I think it's an issue that doesn't come up as cleanly as it does here with respect to facts and the focused issue. I tried to keep my brief short to the court, but there are CCPA cases that address it in more detail. In Ray Roberts, in Ray Pease, in Ray Conover, and all of those, I mean, they're all examples of where there's one missing element, and the examiner seems to pluck that element from the prior art, makes the combination, and says, well, the invention's obvious. Are there an independent motivation to combine in all of those that isn't in any way impacted by the invention story? So for example, in Roberts, well, let me preface that. I'm not aware of any case where there's spinoffable evidence like we have here, and a few conclusory words on the other hand from the examiner, and where the board and this court has said, well, those conclusory words are sufficient to overcome the I will process evidence. But for example, in Ray Roberts, the invention dealt with corrugated plastic film, and it had to have a coefficient of less than .40. And in many cases, an examiner might argue, well, it's just routine experimentation, routine observation to go to below .4. And the CCPA recognized that in that case, there was evidence, meaning an explanation of why it wasn't obvious, because there's a recognition of the source of the problem. And one final thing I will say is that in this case, this case is a little different than spinoffable and I will process, because in both of those cases, the problem was already recognized in the prior art. So in one sense, this invention is even less obvious than what was considered in prior cases, because, and this is the way we framed it in the brief, as a source of the problem or identifying the cause of the problem. But here we go one step further away from obviousness, because we now, our inventors did identify the problem. Up until now, there has been no problem that's ever been indicated or associated with the prior art devices. And all the examiner did was select an element, the missing element, and honestly, the examiner used our explanation of why you would leave out a seam. And as one final closing statement, your honors, I'd submit that in some sense, I think that the examiner and the board itself got a little distracted by the seeming simplicity of the device. I think we all recognize that. It's a P deflector, Mr. Dowd. Your honor, I know. The word seemingly, simplicity, I'll take that as yet another pun. Judge Moore, thank you. Thank you, your honor. All rise. The honorable court is adjourned until tomorrow morning at 10 a.m.